UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

EUNJOO LEE,

                             Plaintiff,

         -against-

SUTTON GARAGE, LLC, SUTTON APARTMENTS
CORPORATION AND BOARD OF MANAGERS OF
THE SUTTON CONDOMINIUM.

                          Defendants.
-----------------------------------------------------------------------------X

**COMPLAINT**

15 Civ- _____

## STATEMENT OF PLAINTIFF'S CLAIMS

1. Plaintiff files this action complaining of Defendants for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 et seq., the New York City Commission on Human Rights Code, Title 5 § 8-107 et seq.; and upon violation of New York common law rights Plaintiff asserts as a party to an enforceable contract for residential cooperative housing, and as a third-party beneficiary to contracts between Defendants which provide for the cooperative housing and parking facilities at issue in this Complaint.

2. Plaintiff is an individual with a disability (paraplegia) who uses a wheelchair. She owns proprietary shares in a cooperative apartment which was newly constructed in 2006, located at 102 Bradhurst Street, New York, New York (hereinafter, "Premises"). Plaintiff's cooperative ownership gives her rights to use an

1

underground parking garage appurtenant to the Premises that was constructed for use by Plaintiff and other cooperative tenants.

3. The parking garage is owned by a private entity that charges Plaintiff and other tenants on a monthly basis to use a parking space. Plaintiff drives herself from to and from work and other locations in a Dodge Caravan which has been modified for her use. Plaintiff uses the garage as her primary means of ingress into and egress from the Premises.

4. The garage ramp was constructed with a slope defect that causes vehicles with lower undercarriage clearance to bottom out at the point of entry/exit from the garage. Vans converted for the use of individuals with mobility disabilities with side-entry lifts have lower undercarriage clearance and consequently bottom out on the garage driveway – or simply cannot pass over the parking garage ramp at all. Plaintiff seeks declaratory and injunctive relief that will correct the slope defect and conform the garage ramp to the Offering Plan and Specifications. Plaintiff also seeks compensatory damages as well as attorney's fees and costs against the Defendants arising out of Defendants' collective refusal to take actions necessary to correct the slope defect despite Plaintiff's oral and written requests to Defendants to correct the defect.

## PARTIES

5.  Plaintiff EUNJOO LEE ("Plaintiff") purchased one of the cooperative apartments located at the Premises in 2007. The apartment came with rights to use a parking garage appurtenant to the Premises. Plaintiff uses a wheelchair secondary to post-Polio paraplegia. Since 2005 Plaintiff has driven a Dodge Caravan that was modified to permit her to drive the van herself from her wheelchair and to exit from and enter into the van independently through use of a side loading lift. The parking garage is Plaintiff's primary means of ingress into and egress from her cooperative apartment building.

6.  Defendant Sutton Garage, LLC (hereinafter, "the Garage") is a New York State Limited Liability Corporation operating under and by virtue of the laws of the State of New York, with New York County chosen as its principal county of incorporation.

7.  Defendant Garage is a "Unit" owner of Defendant Sutton Condominium, and has among its corporate purposes to provide and maintain parking for vehicles owned by the cooperative owners in Defendant Sutton Apartment Corporation. The parking is provided on a monthly fee for use basis.

8.  Defendant Sutton Apartment Corporation (hereinafter, "Sutton Apartments") is a New York State Business Corporation operating under and by virtue of the laws of

the State of New York, with New York County chosen as its principal county of incorporation.

9. Sutton Apartments is a "Unit" owner of Defendant Sutton Condominium, and has among its corporate purposes to own and maintain cooperative housing units at the Premises, and to secure and maintain all rights of cooperative unit tenancies appurtenant thereto vis-à-vis the Co-Defendants and the Sponsor of the cooperative.

10. Defendant Board of Managers of the Sutton Condominium (hereinafter, "Condominium") is an unincorporated New York City based business, and has among its business purposes to own the building and underlying land located at the Premises, and to facilitate the cooperative housing, appurtenant parking garage, and commercial business leasing activities of the "Unit" owners of the Condominium.

## VENUE AND JURISDICTION

11. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 2201 and through the Americans with Disabilities Act.

12. This Court has venue through the personal and corporate residences of the Plaintiff and Defendants in New York County.

## ALLEGATIONS COMMON TO ALL CLAIMS

13. In and around 2005 Bradhurst 100 Development, LLC (hereinafter, "the Sponsor") contracted with a developer to construct the building and attached garage located at the Premises.

14. The Sponsor acquired the Premises from the City of New York in 2005, and in turn conveyed the land to the New York City Partnership Housing Development Fund Company. Thereafter the Sponsor proceeded through various contracts to provide for construction of the Premises and creation of the corporate entities that would become Condominium Unit owners of the Premises. The Condominium ownership agreements were designed to provide 135 residential cooperative units, an appurtenant parking garage, and commercial storefront businesses.

15. The Offering Plan for the Sutton Apartments obligated the Sponsor to ensure that the building and appurtenant parking garage be constructed in accordance with all applicable federal, state and New York City laws, including but not limited to the Americans with Disabilities Act, the New York City Human Right Code, and the New York City Building Code.

16. The building and attached garage were divided into three separate Condominium Units: a residential cooperative Unit (Defendant Sutton Apartments), a Garage Unit (Defendant Garage) and a Commercial Unit which would lease commercial storefront space. The Commercial Unit is not a party to this case.

17. The Offering Plan provided that each of the three Condominium Units would be owners in the Condominium, with clearly delineated, and separable corporate identities and functions.

18. The building was substantially completed in or around 2007.

19. Plaintiff purchased her shares from the Sponsor in 2007 and entered into a long-term proprietary lease with Sutton Apartments coincident with her purchase of the shares.

20. At all times relevant herein, Plaintiff has been employed by the New York State Education Department through its Adult Vocational Rehabilitation Services Agency.

21. Since the beginning of her tenancy in 2007 Plaintiff has used her 2005 Dodge Caravan as her primary means of ingress into and egress from the Premises. Since her tenancy began in 2007, Plaintiff paid Defendant Garage, or its agent, a monthly fee for her use of a parking space in the parking garage located at the Premises. Plaintiff currently pays $350.00 per month to Defendant Garage, through its agent, for the monthly fee to park her vehicle in the garage.

22. Plaintiff's disability, her use of a wheelchair, her employment and use of the parking garage as her primary means of ingress into and egress from the Premises were known to the Sponsor's sales agent.

23. Upon her first use of the parking garage which occurred in visits to the Premises prior to the date of purchase of her cooperative unit, Plaintiff discovered that the slope of the parking garage ramp around the entrance door to the garage was constructed in such a manner that it caused the lowest portion of the undercarriage of her Dodge Caravan to scrape the bottom of the garage ramp.

24. The manner in which the slope of the garage ramp was constructed by the developer of the Premises did not meet the Offering Plan with Specifications, and/or all relevant building code standards related to the slope of the ramp of underground parking garages.

25. As a consequence of the slope defect to the garage ramp Plaintiff enters and exits the garage very slowly at a substantial angle from 0 degrees. Despite this extraordinary means of entering and exiting from the garage, the lowest parts of Plaintiff's van continue to scrape the ramp of the garage at the entrance to the garage.

26. Vans with side entry lifts are installed in an after-market process by companies other than the manufacturers of the vans. Installation of a side entry lift requires lowering the floor of the van by approximately 10-14 inches and raising the suspension of the van to compensate as much as possible for the lowered undercarriage clearance.

27. Despite the best efforts by van customization companies to raise the suspension of vans for people who need side entry lifts, the undercarriage height of such vans is lower than the undercarriage height of unmodified vans.

28. The undercarriage height of vans modified to install side entry lifts is typically higher than many sports cars, e.g. Camaro. Consequently the garage ramp scraping problem experienced by the Plaintiff has been, and will continue to be, a garage access problem experienced by Plaintiff and other Purchasers of cooperative units from Defendant Sutton Apartments who use customized vans with side entry lifts or who drive other vehicles with lower undercarriage clearances.

29. Plaintiff has repeatedly brought the garage ramp defect to the attention of the Sutton Apartments managing agent, co-op Board, Sponsor agent, developer and parking garage operator.

30. Plaintiff was told by the managing agent for Defendant Sutton Apartments that the corporation has been in litigation with the Sponsor and developer to obtain correction of multiple defects to the Premises, including the garage ramp defect complained of by Plaintiff.

31. Plaintiff was told by the managing agent for Defendant Sutton Apartments that it did not own the garage and was not responsible for correcting the garage ramp defect.

32. Plaintiff was told by a person associated with Defendant Garage that it would not correct the garage ramp defect.

33. After several years of unsuccessful efforts to gain correction of the garage ramp defect, Plaintiff retained the undersigned attorney to obtain relief from the Defendants.

34. The undersigned attorney attempted to gain voluntary compliance from the Defendants prior to filing a Complaint.

35. Letters were sent to each of the Defendants.

36. The letters sent by Plaintiff's counsel informed Defendants of the Plaintiff's problem with the parking garage ramp, and referred to obligations each of the Defendants has under the New York City Commission on Humans Rights Code to avoid discrimination against the Plaintiff on the basis of her disability in matters affecting her use and enjoyment of the Premises.

37. The letters stated that the parking garage is Plaintiff's primary means of ingress into and egress from the Premises and specifically requested that the garage ramp be modified at its entrance to remove the slope defect that has affected the Plaintiff's use of the parking garage.

38. The letters stated that removal of the slope defect to the garage ramp would be a reasonable accommodation because an engineering study had already been performed by Defendant Sutton Apartments which identified a means to remove

9

the defect that was not unreasonable in cost. The request is also reasonable on its face because it would require Defendants to conform the parking garage ramp and parking garage services to the Offering Plan and Specifications.

39. These letters were unsuccessful. None of the Defendants gave a written response to the letters. Defendant Sutton Apartment's attorney did relay their response that his client did not own the parking garage and therefore had no power to provide the Plaintiff with the relief she requested. Plaintiff now brings this Complaint seeking involuntary compliance by Defendants with applicable requirements of Title III of the Americans with Disabilities Act, the New York City Commission on Human Rights Law, and New York State common law governing the contractual agreements related to sale of Plaintiff's cooperative and the construction of the Premises.

40. In or around 2011 Plaintiff decided that she wanted to replace her 2005 Dodge Caravan because of its age and heightened risk of parts break down that could result in costly repairs and lost time from work while the van is repaired.

41. Plaintiff researched alternative vans and selected a Toyota Sienna.

42. The Toyota Sienna is one of four van models that are available for modification to accommodate Plaintiff's needs for a van with a side loading lift that she could drive with customized hand controls.

10